UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

PETER OWENS, II,

    Plaintiff,

v.                                           Case No. 2:10-CV-632-FtM-UA-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

**OPINION AND ORDER[1]**

The Plaintiff filed an application for a period of disability and disability insurance benefits and Supplemental Security Income[2] on November 6, 2006, alleging disability beginning June 17, 2005. This claim was denied initially and upon reconsideration. On December 15, 2009, a video hearing was held before Administrative Law Judge Rubin Rivera, Jr., from Fort Lauderdale, Florida [Tr. 15]. On January 4, 2010, Administrative Law Judge Rivera issued his decision denying Plaintiff's applications. [Tr. 15-25] The Appeals Council denied Plaintiff's Request for Review on September 22, 2010, [Tr. 1-5] making the ALJ's decision the final decision of the Commissioner. For the reasons set out herein, the decision is **AFFIRMED**.

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated November 23, 2010. (Doc.# 10).

[2] Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

### I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On November 6, 2006, Plaintiff filed his applications for disability insurance benefits and Supplemental Security Income alleging disability beginning June 17, 2005. The Decision of ALJ Rivera dated January 4, 2010, denied Plaintiff's claim for benefits. (Tr. 15-25). At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date of June 17, 2005. (Tr. 16). At Step 2, the ALJ found that Plaintiff has the following severe physical impairments: osteoarthritis of the cervical

and lumbosacral spine, back and neck pain, depression, and anxiety[3] (Tr. 17). At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4. At Step 4, the ALJ found Plaintiff was unable to perform his past relevant work in road construction, as it is performed at the heavy exertional level. (Tr. 19, 24). However, the ALJ determined Plaintiff was able to perform unskilled medium work, i.e. " lift 50 pounds occasionally, frequently lift 25 pounds, stand or walk for a total of 6 hours in an 8 hour work day, and sit for a total of 6 hours, has no manipulative, visual, communicative or environmental limitations. Plaintiff is able to perform simple routine tasks with periods of mild to moderate concentration, persistence, or pace limitations, and is capable of general appropriate interactions, and can avoid hazards and adopt to routine changes as needed". At step five, the ALJ applied the Medical Vocational Guidelines ("Grids") and found Plaintiff not disabled at step five of the sequential evaluation. 20 C.F.R. §§416.1520(f) and 416.920(f).

The court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11thCir. 2002). Substantial evidence is something more than a mere scintilla, but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210

---

[3] Plaintiff was also diagnosed with COPD, but his pulmonary examination was normal and the medical record is devoid of any pulmonary functioning testing or treatment records. Further, Plaintiff alleged poor sleep and headaches. These symptoms are not addressed in the medical record, either by testing, diagnosis, hospitalization or treatment by a qualified physician. Therefore, these symptoms are not medically determinable impairments (Tr. 18, ALJ's decision).

(11th Cir. 2005). "If the Commissioner's decision is supported by substantial evidence, the Court must affirm...".

## II.    REVIEW OF FACTS

Plaintiff was born on April 11, 1969, and was 38 years old, (and considered "a younger individual,") when he was last insured for benefits, and was 40 years old when the ALJ issued his decision (Tr. 12-29). Plaintiff has a high school education and worked from 1997 through 2002 performing road construction (Tr. 112). Plaintiff is insured for benefits through December 31, 2007 (Tr. 108).

Plaintiff was injured in a work related accident on November 1, 2002. Plaintiff advised Dr. Donald J. Moyer that he was holding onto a generator that fell off a service truck after a boom winch failed to operate properly, causing injuries to his neck, mid-back, and lower back. (Tr. 171).

Plaintiff was seen by Dr. Donald J. Moyer, through worker's compensation on April 3, 2003, with a referral from Jeffrey Williams, M.D. Dr. Moyer's notes reflect that Plaintiff was also being treated by Dr. Raymond A. James, Dr. Steven Tucci and was presently being seen by Dr. Keith Williams[4] (Tr. 171-175). Dr. Moyer examined Plaintiff and reviewed his lumbar MRI, finding it grossly unremarkable for any neural compressive disease or evidence of instability or discopathic changes. Dr. Moyer's ASSESSMENT: "Status post Work Comp injury November 21, 2002, with multi-level complaints of axial entire spine pain with non-focal neurological examination and lumbar MRI that is unremarkable". PLAN: "We

---

[4]    It is noted that a review of the record and transcript failed to provide any documentation or medical records from any of the physicians named by Dr. Moyer in his consultation records (Tr. 171).

will send him for a cervical MRI and obtain his thoracic MRI and see him back in the office once these studies are completed. No medications were given today, and the patient's final disposition will be pending MRI studies".

Plaintiff returned to Dr. Moyer on May 1, 2003. In a letter addressed to Dr. Williams by Dr. Moyer, he advised him that after reviewing Plaintiff's cervical, thoracic and lumbar spine x-rays he found them to be unremarkable, except for some disc bulges in the thoracic spine, "but no evidence of any significant neuro compressive disease that would warrant any neuro surgical intervention" (Tr.171). Dr. Moyer advised Plaintiff that he should continue to follow-up with Dr. Keith Williams for his conservative management. Dr. Moyers discharged Plaintiff from his office with the understanding that Plaintiff could contact him if there were any problems (Tr. 171).

Plaintiff was seen by Dr. Gerald M. Abraham, M.D. for psychotherapy and medication from August 5, 2006, through March 3, 2007 (Tr. 178-183, 253-366). Therapy notes dated August 5, 2006 document Plaintiff's complaints about his inability to locate a pain management doctor, his anxiety and depression regarding his physical condition, and insomnia. (Tr. 266). Dr. Abraham's notes from November 25, 2006, describe Mr. Owens as "polite, head down, sits strangely," and documents his anxiety and his statement that "everything that can go wrong, does go wrong in my life." (Tr. 260). Dr. Abraham's notes of December 5, 2006, continue to document Plaintiff's chronic pain and attempts at locating a pain management doctor. Notes from December 9, 2006, continue to document his complaints of pain, anxiety, "holds his head, downtrodden . . . can't stand to be around people" (Tr. 259). Plaintiff related to Dr. Abraham on December 25, 2006 that physical therapy "was hurting me" (Tr. 181). Dr. Abraham listed Plaintiff's medications as:

Seraquel, Xanax, Klonipin, and Lexapro (Tr. 178, 180-181, 259-260, 262, 264).

Notes from January 6th and January 20, 2007, February 3rd, and February 17, 2007, respectively; continue to document Plaintiff's paranoia, anger, frustration, anxiety, and complaints that his back pain was "worse, miserable" (Tr. 180, 182-183, 254-258). In a Mental Status report dated March 3, 2007, Dr. Abraham assessed Plaintiff's affect as "inappropriate," his mood as "sad, angry, irritable," and noted that his motor skills were "slow," and checked that Plaintiff's insight, judgment, impulse control and attention, were "impaired." (Tr. 178).

On March 5, 2007, Dr. Kenneth A. Visser, a clinical psychologist completed a psychological evaluation. Dr. Visser noted Plaintiff's chief complaint as "being unable to work because of his back problem" and that his emotional problems began after his injury. Plaintiff related that "his emotional problems seem to be the result of receiving inadequate care". During his mental status examination Plaintiff was unable to remain seated during the evaluation. When Plaintiff was sitting "he leaned forward and kept his head down, as a way of trying to relieve his back pain." (Tr. 185). Dr. Visser described Plaintiff's mood as "tense . . . agitated and depressed"; noted "problems with concentration;" and related that he "suffers from depression; cannot enjoy himself, has a loss of energy, a sense of worthlessness, feels guilty for depending on his fiancée, and is irritable much of the time." (Tr. 186-187). Plaintiff was able to listen to questions asked and responded to them while staying on topic. Plaintiff was oriented to person, place and time. Plaintiff understood the purpose of the evaluation. Plaintiff's general fund of information was limited. However his vocabulary skills were adequate, and his abstract reasoning skills were very good. On delayed recall, Plaintiff did acceptably well. Dr. Visser diagnosed Plaintiff with severe

major depression and assessed his GAF at 60. (Tr. 187) (Tr. 222).

On March 14, 2007, Dr. Rajan Sareen completed a medical evaluation. Plaintiff's physical complaints were noted as back and joint pain since 2002; tingling in the left arm, noting that "the pain lasts all the time;" occasional shortness of breath; and stiffness in the back. (Tr. 189). Dr. Sareen described Plaintiff's physical abilities and limitations as "[h]e can sit for about ½ hour and can lay for 2 hours, can stand for 30 minutes; can lift 5 pounds; "has difficulty walking more than a block;"and described his mental symptoms as "anxious, very nervous . . . edgy all the time . . . feels depressed all the time . . . difficulty in sleeping" difficulties with his memory and concentration. Plaintiff "feels fatigued all the time. Has lost interest in worldly activities. Mostly tries to stay alone. Has lost appetite and weight." (Tr. 189). Upon examination, Dr. Sareen noted Plaintiff advised he suffered from persistent pain, rated at 8 on a scale of one to 10.

Dr. Sareen also noted MRI results which revealed thoracic spine disc bulges T8-9 and T9-10; CS disc bulge C5-6 straightening of the cervical lordosis osteophyte, and degenerative joint disease (Tr. 189-191). Plaintiff's medications were noted as Klonipin, Seraquel, Xanax, and Lexapro. (Tr. 189). IMPRESSION: "multiple joint pain and back pain – degenerative disc disease at multiple levels – chronic 2. Anxiety/depression. Smoking/ COPD". DIAGNOSES: "multiple joint pain and back pain . . . secondary to degenerative disc disease at multiple levels . . . ROM reduced at multiple levels . . . lot of paravertebral spasm . . . anxiety and depression are other contributing factors."

Dr. Martha Pollock's evaluation on December 17, 2007, noted Plaintiff's chief complaint was "back and neck pain, depression, anxiety." (Tr. 223). Upon physical examination, Dr. Pollock noted "Patient had no difficulty getting on and off the examination

table, no difficulty heel and toe walking, no difficulty squatting; but unable to hop. Range of motion in the neck was diminished. Straight leg raising elicited pain across the back at 40 degrees bilaterally." (Tr. 224). Additionally, Dr. Pollock noted that Plaintiff "does appear depressed." (Tr. 225).

The exhibit file contains two Physical Residual Functional Assessments ("RFC") completed by State agency reviewing non-medical consultant, Jennifer B. Anderson, State Agency on April 16, 2007 and and reviewing non-medical consultant, Violet Acero Stone, M.D., dated December 27, 2007. (Tr. 210-217, Tr. 227-234). Ms. Anderson indicated on the assessment that Plaintiff was capable of performing light work in that "he is able to lift/carry 20 pounds occasionally and less than 10 pounds frequently; stand, sit and walk "about 6 hours in an 8-hour workday;" and unlimited ability to push and pull" (Tr. 211).

Dr. Stone indicated on the assessment that Plaintiff was capable of: "lifting/carrying 50 pounds occasionally and 25 pounds frequently; standing, sitting and walking 'about 6 hours in an 8-hour workday' unlimited ability to push and pull; and able to stoop and crouch occasionally". (Tr. 228).

The evidence file also contains a Psychiatric Review Technique form ("PRTF") and a Mental Residual Functional Capacity Assessment form ("MRFC"), completed by state agency medical consultant, Cheryl Woodson, Psy.D., dated April 13, 2007; and a second Psychiatric Review Technique form ("PRTF") and Mental Residual Functional Capacity Assessment form ("MRFC"), completed by state agency medical consultant Maryann Wharry, Psy.D., dated December 27, 2007. (Tr. 192-205, 235-248, 249-252).

Dr. Woodson indicated on the "PRTF" that Plaintiff suffered from coexisting non-mental impairments and an affective disorder which was accompanied by decreased energy,

feelings of guilt or worthlessness, and described his limitations as: "mild restriction of activities of daily living; mild difficulties in maintaining concentration, persistence or pace; and moderate difficulties in maintaining social functioning. (Tr. 192, 195, 202). Dr. Woodson described Plaintiff's limitations in the MRFC as *moderately Limited* in "the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions" (Tr. 206-208). Dr. Woodson also remarked in the *Functional Capacity Assessment* that "diminished ability to attend/concentrate for extended periods on complex tasks." (Tr. 208).

Dr. Wharry opined on the "PRTF" that Plaintiff suffered from coexisting non-mental impairments, affective disorders and anxiety-related disorders, resulting in *mild* restriction of activities of daily living; *moderate* difficulties in maintaining social functioning; and moderate difficulties maintaining concentration, persistence or pace. (Tr. 192, 195, 202). Dr. Wharry described Plaintiff's limitations in the "MRFC" as *moderately limited* in the ability to: (1) understand and remember detailed instruction; (2) carry out detailed instructions; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (4) interact appropriately with the general public. (Tr. 206-208).

On December 15, 2009, Plaintiff and Plaintiff's counsel testified at the hearing. The ALJ determined it was not necessary to call upon Plaintiff's witness, Jamie Stonebreaker to corroborate any of Plaintiff's testimony. (Tr. 30-49). Plaintiff testified he left his job performing road construction due to his on the job back injury, which he settled with worker's compensation for $50,000.00. (Tr. 37). Plaintiff testified that his back "ruins me. It hurts" in the "lower, middle and my neck," and that both of his knees "swell up." (Tr. 34,

36-37). He explained that he is not able to completely turn his head and "can't move as much as it used to." (Tr. 35). Plaintiff testified that after the accident he was placed on light duty work and was unable to perform any of the tasks assigned (Tr. 38). Further, he tried working a security job and quit because it involved a lot of walking, and even sitting, which even "as

I'm sitting here now, my back is bothering me" (Tr. 38). Plaintiff advised that his ability to sit and stand varies, "when my back acts up it doesn't have a time frame. It's bothering me now." Plaintiff estimated he could probably sit or stand for 10 to 15 minutes at one time before he would need to "take a rest." (Tr. 39). Plaintiff described the pain in his back as "constant . . . it feels like there's something broke. Something moving around. Sometimes I get sharp, radiating pains that travel down my legs; which I assume is a nerve." Plaintiff testified that his body feels weak all over, "my mind is weak. And it's always tired" (Tr. 41). He also described having headaches three to four times a week which are only relieved by sleeping "many hours." (Tr. 42).

Plaintiff described that with both of his hands he "drops a lot of things . . . . I've broken many cups. I have no control when I drop them except a spasm." (Tr. 43) Plaintiff described having more problems with his left hand, explaining, "I get spasms and totally down to my fingers and numbness." He also testified that he has urinary incontinence and that "I leak a lot. I'm going to the bathroom a lot . . . quite often . . . . I would say about every half an hour . . . And sometimes I actually urinate like a female, sitting down . . . because of my back." He also described having difficulty with taking showers and explained that he takes "very short showers . . . because of my back again (i.e. standing too long causes pain)".

Plaintiff advised of "major anxiety" and panic attacks when in public places, and related that he has "to keep talking to myself, telling myself it's going to pass." (Tr. 46). With regard to his memory and concentration problems, Plaintiff believes that his short term memory is "All right. Long term . . . I don't think it's too good." (Tr. 44). Plaintiff further testified that he also has frequent headaches that feel "like being sick with the flu, nauseous feeling," and are so violent that at one point, he required hospitalization. With regard to his current and past medical treatment, Plaintiff testified that while he was receiving worker's compensation benefits, he was treated with Xanax for his anxiety and panic attacks, which helped, but didn't stop them. (Tr. 46). He stated that he is currently without medical coverage, which is why he has not seen a doctor for the past two years. (Tr. 36). Plaintiff related that he currently takes over the counter medications and "whatever I can get." (Tr. 36). He uses a knee brace for both knees and a back brace, which he uses approximately three to four times per week. Plaintiff testified that he can lift a half gallon of milk with both hands, but feels radiating pain in his arms and neck. (Tr. 47). He related that he is able to raise both arms over his head, but "it hurts."

Plaintiff drives "as little as possible" and quit mowing the yard "because it started bothering my back." (Tr. 34). He related that when he was mowing the yard it was "an all day thing," because he had to take three to four breaks during the process". (Tr. 35). Plaintiff advised driving causes him to be "very anxious . . . sort of it's scary." He tries to go to bed around 8:00 pm an gets up around six or seven, and sleeps a lot during the day. (Tr. 40). He described difficulty shopping due to "Major anxiety. When my back starts bothering me, I'm very angry, frustrated," and has problems dealing with people, and described being thrown out of stores. (Tr. 45)

## III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

### A. THE ALJ ERRED BY FINDING PLAINTIFF CAN PERFORM THE EXERTIONAL DEMANDS OF MEDIUM WORK

Plaintiff contends the ALJ erred by finding Plaintiff can perform the exertional demands of medium work and that finding is not based on substantial evidence. However, in the instant case, the ALJ specifically determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work with his non-exertional limitations. The ALJ found that Plaintiff:

> "[i]s able to lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, push/pull unlimitedly, frequently stoop or crouch, and has no manipulative visual, communicative, or environmental limitations. Additionally, he is able to perform simple routine tasks with periods of mild to moderate concentration, persistence, or pace limitations, that he is capable of general appropriate interactions, and that he can avoid hazards and adapt to routine changes as needed".

(Tr. 17-19). In determining Plaintiff's RFC, the ALJ considered all the medical evidence, including an opinion from state agency physician Dr. Stone that, in an 8-hour workday, Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for 6 hours, sit for 6 hours, and occasionally stoop or crouch (Tr. 23-24, 227-234). The ALJ considered the medical evidence and found Plaintiff could do medium work, that the medical record consisted of normal physical exams, normal mental exams and a lack of any ongoing treatment with therapy or medication, all of which supported Dr. Stone's opinion (Tr. 24). As such, the ALJ gave Dr. Stone's opinion great weight but declined to adopt the limitation to only occasional stooping and crouching, instead finding Plaintiff could frequently stoop and crouch (Tr. 19-24).

Dr. Stone was the only physician that offered a function-by-function assessment of Plaintiff's ability to do work, and no other medical opinion or evidence contradicts her opinion that Plaintiff could perform the exertional demands of medium work. In fact, substantial medical evidence supports such an opinion and the ALJ's RFC finding.

Spine imaging from before and after Plaintiff's alleged disability onset show only mild to moderate degenerative changes with no evidence of fracture, angulation, dislocation, herniation, or cord signal strength abnormality (Tr. 190, 267-269). Neurosurgeon Dr. Moyer examined Plaintiff four times between April 2003 and June 2005 and noted, after unremarkable MRI's and neurological exams, that Plaintiff was neurologically intact with no evidence of any surgical condition (Tr. 171-177). A March 2007 consultative exam indicated Plaintiff was neurologically intact, walked with no assistive device, could heel and toe walk, and had reduced spine range of motion but otherwise full range of motion, normal spine curvature with no tenderness or deformity, no joint redness, tenderness, or deformity, normal motor function, full bilateral grip strength, and normal dexterity (Tr. 189, 191).

In a December 2007 consultative exam, Plaintiff demonstrated no difficulty with manual dexterity, walking with no assistive device, getting on and off the exam table, heel and toe walking, or squatting (Tr. 223-225). Examiner Dr. Pollock noted diminished range of neck motion but no paravertebral muscle spasm, full range of shoulder and dorsolumbar spine motion, intact motor and sensory function, and symmetrical reflexes (Tr. 223-225).

In rendering her opinion, Dr. Stone considered and discussed this medical evidence (Tr. 228). The ALJ was, therefore, well within his authority to rely on Dr. Stone's opinion in making his RFC finding, since her conclusions did not conflict with those of any examining physician. *Milner v. Barnhart*, No. 07-15759, 2008 WL 1923104, at *1 (11th Cir. May 2,

2008).

Plaintiff contends the ALJ erred in concluding Plaintiff could perform the full range of medium work, since Dr. Stone opined Plaintiff could only occasionally stoop and crouch (Doc. 21 at 18-19). The ALJ, however, was not required to adopt wholesale any physician's determinations as to Plaintiff's ability to work if substantial evidence in the record supports the ALJ's contrary RFC finding. *Martha Green v. Comm'r of Soc. Sec.*, 223 Fed. Appx. 915, 2007 WL 1265988 (11th Cir. May 2, 2007).

In determining a claimant's RFC, the ALJ may consider or even adopt statements from medical sources regarding what the claimant can do despite his impairments, but opinions on issues reserved for the Commissioner are not given any particular significance, 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3). "The final responsibility for deciding these issues" lies with the Commissioner. An RFC assessment is not a medical finding; it is an administrative finding based on all relevant evidence, not simply medical source opinions. 20 C.F.R. §§ 404.1545 (a)(1), 416.945 (a)(1); SSR 96-5p. Since an ALJ may adopt opinions expressed in a medical source statement when determining RFC, it follows that such a statement is not strictly required to determine RFC. Requiring an ALJ to base his RFC finding on such statements would abdicate the Commissioner's statutory responsibility to determine whether a claimant is disabled.

The ALJ complied with his statutory and regulatory responsibility to assess Plaintiff's RFC and, after considering the evidence, decide whether he was disabled. The ALJ properly relied on the substantial evidence discussed above to make his findings. Plaintiff's medical records and the ALJ's review of the record as a whole support the RFC determination.

### B. THE ALJ INCORRECTLY APPLIED THE MEDICAL-VOCATIONAL GUIDELINES AND FAILED TO PROVIDE VOCATIONAL EXPERT TESTIMONY

Plaintiff argues the ALJ erred by incorrectly applying the medical-vocational guidelines ("GRID") and failing to provide vocational expert testimony.

The ALJ found that Plaintiff is unable to perform his past relevant very heavy work as a construction worker. (Tr. 24). Thus, the burden of proof shifted to the Commissioner to show that there is other work in the national economy that he can perform, considering his age, education, and past work experience. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11 Cir. th 2004). There are two avenues by which the ALJ determines whether the claimant has the ability to adjust to other work: (1) first, by applying the Medical-Vocational Guidelines; and (2) second, by the use of a vocational expert ("VE"). *Id.* at 1239-40, *citing* 20 C.F.R. Part 404, Subpt. P, App. 2.

In this case, the ALJ determined, based on the substantial evidence noted above, that Plaintiff retained the RFC to meet the full exertional demands of medium work (Tr. 19-24). Therefore, the first situation in which *Phillips* held that VE testimony is required was not present. *Phillips*, 357 F.3d at 1242. The ALJ then determined, citing to SSR 85-15, that Plaintiff's "ability to understand, carry out, and remember simple instructions, use judgment in making work-related decisions, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting does not substantially limit the occupational base" (Tr. 25). The ALJ's finding, that Plaintiff's non-exertional limitations did not significantly limit his basic work skills at the medium work level, indicates the second situation in which *Phillips* held that VE testimony is required was not present either. *Phillips*, 357 F.3d at 1243.

The ALJ relied on grid § 203.28 to find that a younger individual (under age 50) with a high school education and an unskilled work history capable of performing the full range of medium work is not disabled. 20 C.F.R. §§ 404.1569, 416.969; 20 C.F.R. pt. 404, subpt. P, app. 2, § 203.28. The grids also dictate that a person with the same vocational profile who can perform the full range of sedentary or light work, is not disabled. §§ 404.1569, 416.969; 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 201.27, 202.20. Therefore, any error the ALJ made in not finding Plaintiff could only occasionally stoop or crouch was at most harmless. There is no doubt that Plaintiff could perform the full range of light and sedentary work and still be not disabled under the grids. Thus, the ALJ properly applied grid rule 203.28 as a framework to determine that Plaintiff could do other work existing in significant numbers in the economy and was, therefore, not disabled (Tr. 24-25). 20 C.F.R. pt. 404, subpt. P, app. 2, ' 203.28.

Plaintiff does not argue the ALJ erred in assessing the limitations caused by Plaintiff's mental impairments or argue the ALJ did not adequately account for his mental limitations in his RFC finding (Doc. 21 at 11-18). Rather, he argues that, given the mental limitations the ALJ found in evaluating Plaintiff's mental impairments at steps two and three and in determining his RFC at step four, the ALJ needed VE testimony to determine the impact of such limitations on Plaintiff's ability to work. The Eleventh Circuit has held that, to find a claimant capable of working despite a step two or three finding of moderate difficulties in maintaining concentration, persistence, or pace, an ALJ must: (1) indicate that medical evidence suggests that the claimant can work despite the limitation or (2) explicitly or implicitly account for the limitation in a hypothetical question to a VE.

The ALJ specifically discussed medical evidence indicating Plaintiff could work despite his mental limitations and included in his RFC finding specific descriptions, supported by substantial evidence, about what Plaintiff could still do given his mental limitations (Tr. 17-24). In particular, the ALJ found, Plaintiff could perform simple routine tasks with periods of mild to moderate concentration, persistence, or pace limitations, interact appropriately, avoid hazards, and adapt to routine changes as needed (Tr. 19). The medical evidence the ALJ noted supports these findings.

The ALJ complied with his statutory and regulatory responsibility to assess Plaintiff's RFC and, after considering the evidence, decide whether he was disabled. The ALJ properly relied on the substantial evidence discussed above to make his findings. Plaintiff's medical records and the ALJ's review of the record as a whole support the RFC determination.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The plaintiff is not entitled to a period of disability or disability insurance benefits under sections 216(I) and 223 of the Social Security Act. The plaintiff is not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Social Security Act. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Case No. 2:10-cv-632-DNF

Owens v. Commissioner of Social Security

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 15th day of March, 2012.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record
All Counsel of Record